IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KAITLYN REICHWALDT,

   Plaintiff,

   v.

GENERAL MOTORS LLC,

   Defendant.

CIVIL ACTION FILE
NO. 1:16-CV-2171-TWT

**OPINION AND ORDER**

This is a products liability action. It is before the Court on the Defendant's Motion to Transfer Case to the District of Nebraska [Doc. 6].

**I. Background**

The case arises out of an accident that occurred on January 27, 2015, in Lincoln, Nebraska. A young man named Justin Woodson lost control of the 1984 CK pickup truck he was driving, which then crossed a low grass median in front of Ms. Reichwaldt's Ford Taurus. Ms. Reichwaldt's car struck the CK pickup truck near the passenger side gas tank. The tank ruptured, there was an explosion, and Ms. Reichwaldt was seriously burned. Fortunately, the Plaintiff was pulled from her burning car by a bystander and two police officers. There is a closed circuit videotape

which shows the aftermath of the collision and the burning vehicles. Mr. Woodson has admitted he caused the wreck, pleaded guilty to reckless driving and served jail time. Moreover, because a police officer was driving next to Ms. Reichwaldt at the time of the wreck, there is dash cam footage showing the events leading right up to the moment of impact.

After Ms. Reichwaldt was released from the hospital and completed her treatment, she moved to Suwanee, Georgia, where she currently resides with her parents. She has no plans to return to Nebraska. Both the CK pickup truck and Ms. Reichwaldt's Ford Taurus – which are the "key" pieces of physical evidence in this case – are stored in Villa Rica, Georgia. The key damages witnesses live in Georgia – Kaitlyn Reichwaldt and her parents. The key scene witnesses – those who were at the scene at the time of the wreck – have signed sworn affidavits expressing their willingness to travel to Atlanta for the trial of this matter in order to testify live if asked to do so.

The Plaintiff alleges that GM has known since the early 1970s when it designed and first started selling its CK pickup trucks that American citizens would burn and die in those trucks when they were struck on the side in foreseeable wrecks. That is because the gas tank was located in a known "crush zone" on the side of the truck outside the frame rails with no protection from side impact. GM manufactured and

sold the CK trucks with side-mounted gas tanks from 1972 through 1988 (1973-1987 model years). GM has been sued hundreds of times as a result of deaths and injuries due to fire in CK trucks, all over the country, including at least 20 times in this state.

This is a design defect case, in which punitive damages are sought. The liability issues are whether the design of the CK truck is defective, and whether GM's conduct in selling the CK trucks and failing to warn of the known danger is reckless or wanton and warrants the imposition of punitive damages. The key witnesses with knowledge of those issues are current and former GM employees, most of whom still live in Michigan. All or at least most of the relevant GM documents have been, and presumably still are, maintained by either the King & Spalding firm in Atlanta or by the Swift Currie firm. In past CK truck cases, the relevant GM documents have been produced in Atlanta. None of the key documents are located in Nebraska.

The Plaintiff's lead counsel has been involved in 15 past CK truck cases. GM has in the past hired lawyers and experts from all over the country to defend GM's gas tank design. The Plaintiff asserts without contradiction that GM has never retained an expert witness from Nebraska for a CK truck case. GM is not represented by any Nebraska lawyers. The last CK truck case the Plaintiff's counsel handled was defended by the Swift Currie firm of Atlanta. In this case, GM is defended by the same Atlanta firm and by Dykema Gossett of Detroit.

This case will be litigated mainly in Georgia, where the Plaintiff and her family live and have chosen to file suit, and in Michigan, where GM and its witnesses are located. The Nebraska connection is, because of the nature of this lawsuit and the issues, insubstantial. The Nebraska connection is eclipsed by the litigation that will take place in other states, where GM's experts reside and must be deposed or where former GM employees now reside and must be deposed. In another case currently being handled by the Plaintiff's counsel against GM, GM hired experts in Utah, California, Texas, and Arizona for a wreck that occurred in Atlanta, Georgia.

## II. Discussion

The Court must give the Plaintiff's chosen forum a substantial degree of deference.[1] However, 28 U.S.C. § 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As the party seeking to move this case away from the Plaintiff's home district, GM has the burden of demonstrating good reasons for changing venue and must prove that the inconvenience to GM if the case is not transferred sufficiently outweighs the burden

---

[1] Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) ("[T]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.").

which the transfer would impose on Ms. Reichwaldt.[2] A court may only disregard a plaintiff's choice of forum if it concludes that "for the convenience of parties and witnesses" the "interests of justice" require transfer. Courts in the Eleventh Circuit consider a variety of factors in determining whether a transfer is in the interests of justice, including: the convenience of the witnesses and parties, the relative means of the parties, the location of relevant documents and the relative ease of access to sources of proof, the locus of operative facts, the availability of compulsory process for witnesses, a forum's familiarity with the governing law, and trial efficiency and the interests of justice.[3]

    GM has not met its burden of proving that any alleged inconvenience to GM caused by litigating in this district "outweighs" the inconvenience to the Plaintiff if this case is moved away from her home district. There is no burden or "inconvenience" on GM to litigate this case in this district. In fact, it is clearly far more convenient for GM to litigate in this district than in Nebraska. GM's lead counsel is in Detroit; its key witnesses are in Michigan. GM's lead counsel (from Detroit) and GM witnesses will have to travel to hearings and to trial regardless of whether this case is in Nebraska or Georgia. Atlanta is closer to Detroit than is

---

    [2]     Goldstein v. Kellwood Co., 933 F. Supp. 1082, 1086 (N.D. Ga. 1996).

    [3]     Manuel v. Convergys Corp., 430 F. 3d 1132, 1135 n.1 (11th Cir. 2005).

Lincoln, Nebraska. Atlanta also has a much larger airport, with more airlines, with frequent and direct flights between Detroit and Atlanta.

Most of the crucial evidence in this case is not located in Nebraska. The Plaintiff and the wrecked vehicles are here in Georgia. The documents relevant to GM's design decisions and its failure to warn of the dangers of the CK pickup truck have in the past been located in Georgia and are indisputably located in Michigan. The "key witnesses" – GM employees and the parties' experts – are scattered across the country. The only "evidence" in Nebraska consists of scene witnesses and treating physicians. Out of the three states with connections to this case, Nebraska's connections are the weakest.

The role of eyewitness testimony regarding this wreck is greatly diminished by three facts. First, there are videos showing the accident sequence and immediately following the crash. The video of the aftermath of the wreck shows the police officers and Mr. Songer removing Ms. Reichwaldt from her burning car. There is no reason why additional testimony from police or first responders cannot effectively be presented through video depositions. Second, Woodson has admitted fault and pleaded guilty to causing the wreck. Third, Woodson and Songer, the scene witnesses with the most direct involvement with the wreck, have agreed to come to trial if asked to do so. Given the issues in the case, it is highly unlikely that GM would call any of these

witnesses. Damage witnesses such as treating physicians are not "key" witnesses for purpose of the transfer analysis because their testimony is usually taken by videotaped depositions.

The relative means of the parties favor leaving the case here. All the documents relevant to the primary issues in this case – defect and punitive damages – are either in Georgia or Michigan. The only possibly relevant documents in Nebraska relate to the wreck and Ms. Reichwaldt's post-injury care. Those documents are available to the parties. GM fails to articulate any reason why a "site visit" would be relevant, necessary, or even remotely helpful in this case, particularly given the videos of the wreck and the accident reconstruction GM will likely have done. The defective 1984 GM CK pickup truck that injured the Plaintiff was not designed or manufactured in Nebraska – it was designed in Michigan and built in Wisconsin.  None of the conduct of GM at issue occurred in Nebraska. This Court is capable of applying whatever law applies to any case pending in the Court. Nebraska has no current interest in having the case tried in its courts. Georgia has a strong interest in protecting its citizens from dangerous products and allowing one of its citizens to recover for the injuries she suffered, regardless of where those injuries were suffered.

### III. Conclusion

For the reasons set forth above, the Defendant's Motion to Transfer Case to the District of Nebraska [Doc. 6] is DENIED.

SO ORDERED, this 27 day of March, 2017.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge