IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KAITLYN REICHWALDT,

  Plaintiff,

  v.

GENERAL MOTORS LLC,

  Defendant.

CIVIL ACTION FILE
NO. 1:16-CV-2171-TWT

OPINION AND ORDER

This is a products liability action. It is before the Court on the Defendant's Motion to Dismiss Counts II, III, and IV of the Revised First Amended Complaint [Doc. 95]. For the reasons set forth below, the Defendant's Motion to Dismiss [Doc. 95] is GRANTED.

I. Background

This case arises out of an automobile accident in which the Plaintiff sustained serious burn injuries. The Defendant in this case is GM LLC ("New GM"). On June 1, 2009, GM Corporation ("Old GM") filed for Chapter 11 bankruptcy protection in the U.S. Bankruptcy Court for the Southern District of New York.[1] On July 5, 2009, the Bankruptcy Court approved the sale of

---

[1] Revised First Am. Compl. ¶ 28.

substantially all of Old GM's assets to New GM.[2] As a part of this sale, New GM expressly assumed certain liabilities of Old GM, including liabilities for personal injury resulting from vehicles manufactured by Old GM.[3] New GM also hired most of Old GM's employees, including senior-level management.[4]

The Plaintiff Kaitlyn Reichwaldt alleges that on January 27, 2015, she was driving her vehicle in Lincoln, Nebraska when a 1984 General Motors "CK" pickup truck spun out of control and crossed the median.[5] The side of the CK pickup truck struck the front of the Plaintiff's vehicle.[6] The CK truck's gas tank was crushed against the steel frame rail of the truck, causing gasoline to spray over the Plaintiff's car.[7] The gasoline then exploded, and the Plaintiff suffered severe burn injuries.[8] The Plaintiff alleges that, but for the burn injuries resulting from the fuel tank explosion, she would have been uninjured in this accident.[9]

The CK pickup truck was manufactured by Old GM from 1973 until

---

[2] *Id.*

[3] *Id.* ¶ 30.

[4] *Id.* ¶ 32.

[5] *Id.* ¶ 5.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

1987.[10] According to the Plaintiff, the CK pickup truck has an extremely dangerous vehicle design that has caused numerous post collision fuel fed fires.[11] The gas tank of the CK truck is mounted on the side of the vehicle, outside of the steel frame rails, in an area known as the "crush zone."[12] The Plaintiff alleges that Old GM chose this design so that it could market the truck as having a larger gas tank.[13] In this location, the gas tank is only protected by the side sheet metal, and is affixed to the rigid steel frame rail.[14] Consequently, the gas tank is vulnerable to side impacts because it can be crushed if the side of the truck is hit by another vehicle.[15] Thus, according to the Plaintiff, this design presents a "horrific" risk of post collision fuel fed fire, even in relatively minor accidents.[16] The Plaintiff alleges that numerous individuals have suffered serious injuries as a result of this design in small accidents that otherwise would have presented little risk of injury.[17]

And, according to the Plaintiff, Old GM knew about this danger from the

---

[10] *Id.* ¶¶ 16, 23.

[11] *Id.* ¶ 22.

[12] *Id.* ¶¶ 1, 4.

[13] *Id.* ¶ 12.

[14] *Id.* ¶ 4.

[15] *Id.* ¶ 6.

[16] *Id.* ¶ 7.

[17] *Id.*

beginning.[18] The Plaintiff alleges that Old GM knew that the fuel system was vulnerable to side impact even before it manufactured and marketed the CK pickup truck.[19] According to the Plaintiff, Old GM was aware of numerous studies showing the dangers of placing the gas tank in the crush zone of an automobile.[20] However, it decided that it would be cheaper to settle cases resulting from these accidents than to change the design.[21] The Plaintiff further alleges that Old GM took a number of affirmative steps over the years to conceal these dangers.[22] Despite this knowledge, Old GM continued to manufacture and market the CK truck, and hundreds of thousands of CK trucks are still on the road today.[23] According to the Plaintiff, numerous lawsuits have been filed over the years involving this dangerous design.[24]

On May 19, 2016, the Plaintiff filed this lawsuit, and the Defendant removed to this Court. The Defendant then filed a motion with the U.S. Bankruptcy Court for the Southern District of New York seeking to enforce that

---

[18] *Id.* ¶¶ 6, 9.

[19] *Id.* ¶ 41.

[20] *Id.* ¶ 9.

[21] *Id.* ¶ 14.

[22] *Id.* ¶ 45.

[23] *Id.* ¶ 27.

[24] *Id.* ¶¶ 17, 49, 51-52.

court's July 5, 2009 Sale Order and Injunction.[25] The Bankruptcy Court concluded that the Plaintiff's Complaint could not pass through the "bankruptcy gate" because it did not sufficiently distinguish between the conduct of Old GM and New GM.[26] It also concluded that the Plaintiff could not seek punitive damages based upon the conduct of Old GM.[27] The Plaintiff then filed her First Amended Complaint. In her First Amended Complaint, the Plaintiff alleges claims for negligence of Old GM, failure to warn by Old GM, failure to warn by New GM, and punitive damages.[28] The Defendant now moves to dismiss Counts II, III, and IV of the First Amended Complaint.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[29] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even

---

[25] *See* Notice of Bankruptcy Court Opinion, Memorandum Opinion and Order [Doc. 86-1].

[26] *Id.* at 13.

[27] *Id.* at 15.

[28] To comply with the Bankruptcy Court's ruling, the Plaintiff only requests punitive damages based upon the conduct of New GM.

[29] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); FED. R. CIV. P. 12(b)(6).

if the possibility of recovery is extremely "remote and unlikely."[30] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[31] Generally, notice pleading is all that is required for a valid complaint.[32] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[33]

### III. Discussion

#### A. Choice of Law

The Court must first determine what law applies to this case. The parties agree that Georgia law governs this case, and the Court concludes that this is correct.[34] This case is before the Court based on diversity jurisdiction. The Court therefore looks to Georgia's choice of law requirements to determine the

---

[30] *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).

[31] *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[32] *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986).

[33] *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

[34] Def.'s Mot. to Dismiss, at 5-7; Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 5 ("GM LLC concedes Georgia law applies to Plaintiff's failure to warn claims.").

appropriate rules of decision.[35] Georgia follows the traditional approach of *lex loci delecti* in tort cases, which generally applies the substantive law of the state where the last event occurred necessary to make an actor liable for the alleged tort.[36] Usually, this means that the "law of the place of the injury governs rather than the law of the place of the tortious acts allegedly causing the injury."[37] However, there is an exception when the law of the foreign state is the common law. "[T]he application of another jurisdiction's laws is limited to statutes and decisions construing those statutes. When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law."[38] Since no statute is involved, the Court will apply Georgia law.

However, the parties disagree as to what law governs the issue of punitive damages. The Plaintiff argues that Georgia law should also apply to her claim for punitive damages, while the Defendant argues that Nebraska law, which

---

[35] *Frank Briscoe Co., Inc. v. Ga. Sprinkler Co., Inc.*, 713 F.2d 1500, 1503 (11th Cir.1983) ("A federal court faced with the choice of law issue must look for its resolution to the choice of law rules of the forum state.").

[36] *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 816 (2005); *Int'l Bus. Machines Corp. v. Kemp*, 244 Ga. App. 638, 640 (2000).

[37] *Mullins v. M.G.D. Graphics Sys. Grp.*, 867 F. Supp. 1578, 1581 (N.D. Ga. 1994).

[38] *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 677 (N.D. Ga. 2003) (internal quotations omitted). The Georgia Supreme Court has recently reaffirmed this exception. *See Coon v. The Med. Ctr., Inc.*, 300 Ga. 722, 729 (2017) ("In the absence of a statute, however, at least with respect to a state where the common law is in force, a Georgia court will apply the common law as expounded by the courts of Georgia.").

prohibits punitive damages awards, should govern.[39] The Court concludes, however, that it is unnecessary to resolve this dispute because the substantive claim underlying the request for punitive damages fails to state a claim, as discussed below.

### B. Failure to Warn – Old GM

First, the Defendant moves to dismiss Count II, which alleges a claim for failure to warn based upon Old GM's conduct. In Count II, the Plaintiff alleges that Old GM breached its duty to warn of the danger present in its CK trucks, and that New GM expressly assumed liability for product liability claims against Old GM.[40] The Defendant argues that Georgia law does not recognize a duty to warn this particular plaintiff because she is neither the purchaser nor driver of the CK pickup truck.[41] Thus, according to the Defendant, the Plaintiff fails to state a claim for relief. The Plaintiff argues that Georgia law requires the Defendant to warn reasonably foreseeable third-party victims of the dangerous design of the CK truck.[42]

"Under Georgia law, a manufacturer has a duty to warn of nonobvious

---

[39] Def.'s Mot. to Dismiss, at 17-19; Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 21-25.

[40] First Am. Compl. ¶¶ 76-82.

[41] Def.'s Mot. to Dismiss, at 7.

[42] Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 6.

foreseeable dangers from the normal use of its product."[43] "In failure to warn cases, the duty to warn arises whenever the manufacturer knows or reasonably should know of the danger arising from the use of its product."[44] "That duty requires warnings of 'nonobvious foreseeable dangers from the normal use of its products.'"[45] This duty to warn may be owed to consumers, purchasers of the product, reasonably foreseeable users, and, in some cases, reasonably foreseeable third parties.[46] The existence of a legal duty to warn is a question of law for the Court to determine.[47]

The Court concludes that Old GM did not owe a duty to warn this Plaintiff. In a similar set of facts, the Georgia Supreme Court recently rejected a plaintiff's claim for failure to warn. In *Certainteed Corp. v. Fletcher*, the plaintiff, who had been diagnosed with mesothelioma, sued an asbestos manufacturer.[48] The plaintiff's father worked with asbestos-laden water pipes manufactured by the defendant, and the plaintiff alleged that she developed

---

[43] *Thornton v. E.I. Du Pont De Nemours & Co.*, 22 F.3d 284, 289 (11th Cir. 1994).

[44] *Chrysler Corp. v. Batten*, 264 Ga. 723, 724 (1994).

[45] *Certainteed Corp. v. Fletcher*, 300 Ga. 327, 330 (2016) (quoting *Thornton v. E.I. Du Pont De Nemours & Co.*, 22 F.3d 284, 289 (11th Cir. 1994)).

[46] *Id.*

[47] *Id.*

[48] *Id.* at 327.

mesothelioma as a result of washing her father's asbestos-dust-covered clothing for years.[49] The court concluded that the asbestos manufacturer owed no duty to warn the plaintiff of the dangers of the asbestos dust. The court agreed that a manufacturer can owe a duty to warn to a reasonably foreseeable third party. However, it emphasized that this analysis is not limited solely to whether a plaintiff is reasonably foreseeable. Instead, the court noted that "[i]n fixing the bounds of duty, not only logic and science, but public policy play an important role."[50] The court concluded that it would be "unreasonable to impose a duty on [the defendant] to warn all individuals in [the plaintiff's] position, whether those individuals be family members or simply members of the public who were exposed to asbestos-laden clothing, as the mechanism and scope of such warnings would be endless."[51]

That same reasoning applies here. Like in *Certainteed Corp.*, the Plaintiff argues that Old GM owed a duty to warn reasonably foreseeable third-party victims of the dangerous fuel tank system in the CK truck. And, like in *Certainteed Corp.*, this would be a duty with almost no fixed scope. With hundreds of thousands of CK pickup trucks on the road, there are countless individuals who could foreseeably come into contact with CK pickup trucks. It

---

[49] *Id.*

[50] *Id.* (quoting *CSX Transp. v. Williams*, 278 Ga. 888, 890 (2005)).

[51] *Id.* at 331.

would be impractical, if not impossible, to fulfill this purported duty to warn. It is difficult to imagine the manner in which Old GM would have been able to make such a warning, and it would be unreasonable to impose such a duty. The Georgia Supreme Court made a public policy determination in *Certainteed Corp.* against imposing a duty to warn in situations such as this.[52] Thus, the Plaintiff's claim for Old GM's failure to warn fails under Georgia law.

The Plaintiff attempts to distinguish *Certainteed Corp.* by arguing that its "holding was based on a line of case law specific to manufacturers of asbestos products and does not diminish or eliminate GM Corp.'s duty to warn M[s]. Reichwaldt."[53] Although it is true that *Certainteed Corp.* was a case involving asbestos, and relied upon other cases involving asbestos liability, nothing in the court's reasoning limited its holding to asbestos cases. The court discusses the public policy and practicability of imposing a duty to warn in general, and uses language that refers generally to the duty to warn.[54] This reasoning applies with equal force to this case, in which the Plaintiff argues for a duty to warn all reasonably foreseeable third parties who may be in the vicinity of contact of these trucks. Thus, the distinction the Plaintiff draws is unpersuasive.

The Plaintiff also cites a number of Georgia cases holding that a duty to

---

[52] *Id.* at 330.

[53] Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 8.

[54] *Certainteed Corp.*, 300 Ga. at 330.

warn can be owed to a reasonably foreseeable third party.[55] Although this is true, this does not mean that a duty to warn is *always* owed to reasonably foreseeable third parties. As the court explained in *Certainteed Corp.*, other considerations, such as public policy, come into play when establishing the scope of this duty. Although a duty to warn *can* be owed to reasonably foreseeable third-party victims, this duty is not imposed in situations like *Certainteed Corp.* where satisfying this duty would be nearly impossible.[56]

The Plaintiff also argues that, even if Old GM did not have a duty to warn her, it did have a duty to warn the driver of the truck, and that this failure to warn the driver proximately caused her injuries.[57] However, the Georgia Supreme Court specifically addressed and rejected this argument in *Certainteed Corp.* There, the plaintiff argued that, even if the asbestos manufacturer did not have a duty to warn the plaintiff, it still had a duty to warn the plaintiff's father, who would have taken steps to mitigate the danger of the asbestos dust on his

---

[55] Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 6; *see also J.C. Lewis Motor Co. v. Williams*, 85 Ga. App. 538, 541 (1952) ("One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel . . . or [expect] to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied . . . .").

[56] *Certainteed Corp.*, 300 Ga. at 331 ("The recognition of a common-law cause of action under the circumstances of this case would, in our opinion, expand traditional tort concepts beyond manageable bounds and create an almost infinite universe of potential plaintiffs.").

[57] Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 8-9.

clothing.[58] The court, in rejecting this argument, explained that:

> While the Court of Appeals recognized below that Fletcher would not have seen any warning label placed on CertainTeed's products, it nevertheless concluded that a warning could have permitted her father to take steps to mitigate any danger posed by the asbestos dust on his clothing. This conclusion is problematic. The duty as envisioned by the Court of Appeals is specifically crafted based on the unique facts present here, without consideration for its broader application. We are disinclined to conclude that CertainTeed owed a duty to warn third parties based on the fact that, in this case, such a warning may have been effective. Indeed, under the theory developed below, the warning aimed at protecting third parties would not have been systematically distributed or available to the individuals to which it was targeted; instead, the onus would have been on the worker to keep those third parties safe. It is not difficult to envision that, while some workers might have taken steps to protect or warn family members or other individuals with whom they came in contact, other workers might not have taken such steps.[59]

There, the plaintiff argued that warning the father would have allowed him to mitigate the danger to his daughter who dealt with his clothes. Here, the Plaintiff argues that warning the driver of the CK pickup truck would have allowed him to mitigate the danger that he presented to the Plaintiff and other drivers on the road. This is the same logical chain. Therefore, since the Georgia Supreme Court rejected this analogous argument, the Court finds that this argument also fails under Georgia law.

The Plaintiff cites Justice Melton's concurrence in *Certainteed Corp.*, which rejected this conclusion by the court. In this concurring opinion, Justice

---

[58] *Id.* at 330.

[59] *Id.*

Melton cautioned that the court's opinion "may give the impression that this Court is deciding issues relating to the duty to warn not only Fletcher, but the duty to warn her father as well" and that this holding was misguided because "[o]ur analysis in this case does not and should not reach or analyze the issue of CertainTeed's duty to warn Fletcher's father or the ramifications of any failure to warn Fletcher's father."[60] However, despite Justice Melton's concurrence, the court's majority opinion explicitly rejected this argument. Therefore, this Court must reject the analogous argument that the Plaintiff makes here.

The Plaintiff also cites *Folsom v. Kawasaki Motors Corp. U.S.A.*[61] in support of this argument. In *Folsom*, a man was killed by a minor driving a jet ski while swimming in a lake. The plaintiff argued that the defendant's failure to place a warning on the jet ski proximately caused this accident because the jet ski driver would have been able to avoid the accident if there had been a warning.[62] The U.S. District Court for the Middle District of Georgia denied the Plaintiff's motion for summary judgment, and concluded that "genuine issues of material fact exist to be tried as to whether Kawasaki's alleged failure to warn of the off-steering characteristics of the Jet Ski proximately caused the

---

[60] *Certainteed Corp. v. Fletcher*, 300 Ga. 327, 331 (2016) (Melton, J., concurring).

[61] 509 F. Supp. 2d 1364 (M.D. Ga. 2007).

[62] *Id.* at 1380.

accident in question."[63] However, the defendant did not dispute that it owed a duty to warn in this case. Instead, it disputed whether a warning would have been effective.[64] Thus, the court did not address whether such a duty to warn exists, as the parties dispute in this case. In contrast, the Georgia Supreme Court explicitly considered this issue in *Certainteed Corp.* and concluded that a duty to warn did not exist.[65] Therefore, the Court finds that Plaintiff fails to state a claim under Georgia law.

### C. Failure to Warn – New GM

Next, the Defendant moves to dismiss Count III. In Count III, the Plaintiff alleges a claim for failure to warn based independently upon the conduct of New GM. The Plaintiff argues that New GM knew of the dangers presented by the CK trucks and did nothing to warn of these dangers. According to the Plaintiff, New GM, despite knowing of these dangers, profited off of the CK pickup truck by entering into service and repair relationships with CK owners and continuing to manufacture and sell parts for CK pickup trucks.[66] Therefore, according to the Plaintiff, New GM has its own independent duty to warn.

However, as explained above, the duty to warn under Georgia law does

---

[63] *Id.*

[64] *Id.*

[65] *Certainteed Corp. v. Fletcher*, 300 Ga. 327, 330 (2016).

[66] Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 11-12.

not extend to the Plaintiff in this case, who was one of the countless third-party bystanders who could come into the vicinity of contact with the CK truck. For the same reasons as outlined above with regard to Old GM, New GM does not owe a duty to warn to this Plaintiff. Since no duty to warn is owed to this Plaintiff generally, the Court finds it unnecessary to address whether New GM could owe a duty to warn based upon its own independent conduct.

### D. Count IV - Punitive Damages

Finally, the Defendant moves to dismiss the Plaintiff's claim for punitive damages. The Defendant argues that Count IV seeks punitive damages based solely upon the conduct of New GM.[67] And, since Count III is the only claim based upon New GM's conduct, its dismissal would require dismissal of Count IV as well.[68] The Court agrees. The Plaintiff admits in her First Amended Complaint that Count IV seeks punitive damages based only upon New GM's conduct. Therefore, since Count III fails to state a claim under Georgia law, the Plaintiff's claim for punitive damages must also be dismissed.[69]

---

[67] The U.S. Bankruptcy Court for the Southern District of New York ruled that New GM did not contractually assume liability for claims for punitive damages based upon Old GM's conduct. As a result of this ruling, the Plaintiff cannot request punitive damages based upon Old GM's conduct. The Plaintiff consequently revised her First Amended Complaint to only request punitive damages based upon New GM's conduct. First Am. Compl., at 3 n.2.

[68] Def.'s Mot. to Dismiss, at 17.

[69] Since there is no underlying substantive claim to support a claim for punitive damages, the Court need not determine which state's law applies to Count IV.

## IV. Conclusion

For the reasons stated above, the Defendant's Motion to Dismiss [Doc. 95] is GRANTED.

SO ORDERED, this 9 day of January, 2018.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge